# Exhibit A

9/27/2017 9:19 AM
Chris Daniel - District Clerk Harris County
Envelope No. 19691542
By: Justina Lemon
Filed: 9/27/2017 9:19 AM

# 2017-63881 / Court: 334

## CAUSE NO _____

| | | |
|---|---|---|
| **CHRISTOPHER LOREN SMITH** | § | |
| **Plaintiff** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **HOUSTON INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | |
| **SUSAN MONAGHAN,** | § | |
| **ROBERT MAXEY, and** | § | **_____ JUDICIAL DISTRICT  §** |
| **Defendants** | § | |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff CHRISTOPHER LOREN SMITH to file his "Plaintiff's Original Petition" as follows:

### PREAMBLE

*This is a suit for damages resulting from the intentional destruction of Plaintiff's career, livelihood, and mental health, using tactics that have irrevocably harmed Plaintiff.*

### A. DESIGNATION OF DISCOVERY CONTROL PLAN

1.      Discovery for the following claims should be conducted under Level 3 of the Texas Rules of Civil Procedure 190.

### B. SUBJECT MATTER JURISDICTION, VENUE, & RELIEF SOUGHT

2.      The Court has jurisdiction over the following claims because this is a civil matter and the damages sought are within the jurisdictional limits of the Court.

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

3.      Venue is proper in Harris County because it is the county in which all or a substantial part of the events giving rise to the claims occurred.

4.      In accordance with Rule 47 of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief of over $1,000,000.00, as well as certain declaratory rulings. Further, Plaintiff demands judgment for all other relief to which Plaintiff is deemed entitled.

## C.  **PARTIES AND SERVICE**

5.      Plaintiff **CHRISTOPHER LOREN SMITH** ("Christopher") is a 29 year old individual residing in Fort Bend County, Texas.

6.      Defendant   **HOUSTON   INDEPENDENT   SCHOOL   DISTRICT** ("Houston ISD") is a public school district located in Harris County, Texas and may be served with citation by serving its superintendent as follows:

> **Houston Independent School District**
> **Richard A.  Carranza**
> **4400 West 18th Street**
> **Houston, Texas 77092**

7.      Defendant **SUSAN MONAGHAN** ("Monaghan") is an individual working in Harris County, Texas and may be served with citation at her place of work as follows:

> **Susan Monaghan**
> **Westbury High School**
> **11911 Chimney Rock Road**
> **Houston, Texas 77035**

8.    Defendant **ROBERT MAXEY** ("Maxey") is an individual working in Harris County, Texas and may be served with citation at his place of work as follows:

> **Robert Maxey**
> **Westbury High School**
> **11911 Chimney Rock Road**
> **Houston, Texas 77035**

### D.   GENERAL BACKGROUND

9.    Until recently, Plaintiff Christopher was an educator within the Texas public school system. In addition to classroom teaching, Christopher has followed his passion of coaching basketball and mentoring the high school students he has taught and coached.

10.    Christopher went to high school at Hightower High School in the Fort Bend Independent School District, where he likewise enjoyed playing on the school's basketball team.

11.    While attending college, Christopher excelled at basketball at the University of The Incarnate Word in San Antonio, Texas and Franks Phillips College in Borger, Texas.

12.    In 2011, Christopher received his Educational Aid I Texas Educator Certificate.

13.    Christopher graduated from the University of Houston in 2012 with a Bachelor of Science Degree in Health.

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

14.     Christopher received a Texas Educator Certificate for English Language Arts and Reading in 2015 ("Teacher's Certificate"). Physical Education is also associated with Christopher's Teaching Certificate.

15.     In July 2015, Christopher heard that Westbury High School ("Westbury High"), a school within Houston ISD, had an opening for its head basketball coach ("Head Basketball Coach").

16.     At that time, Christopher already had four years of experience with high school varsity athletics. Christopher also received a strong recommendation from a fellow head high school basketball coach.

17.     Christopher interviewed for the position and was hired as the new Head Basketball Coach for Westbury High.

18.     In addition to being the Head Basketball Coach, Christopher was assigned to teach English at Westbury High.

19.     Christopher started the 2015-2016 school year at Westbury High filled with all the hopes and enthusiasm associated with a new school year and a new position.

20.     As a coach and mentor to young men, Christopher was on his way toward a possible future role within the National Basketball Association system.

21.     As stated by a colleague of Christopher's from Westbury High:

> "Coach Smith has a strong philosophy:
> *Treat a man as he is and he will stay as he is,*
> *Treat a man as he should and could be, and*
> *he will become what he should and could become."*

22.     Unfortunately, Christopher did not know that Defendant Monaghan and Defendant Maxey were determined to insure that Christopher's time at Westbury High was short-lived.

23.     Nor could Christopher have known that Defendant Houston ISD would act in concert with Defendants Monaghan and Maxey to destroy Christopher.

24.     In August 2015, Defendant Monaghan was beginning her first year as a high school principal. Defendant Monaghan had just finished as principal of a middle school.

25.     Defendant Monaghan asked her friend, Defendant Maxey, to follow her Westbury High to be the Head Basketball Coach.  However, Defendants Monaghan and Maxey had not anticipated that Christopher would appear on the scene with a far more qualified resume.

26.     With Christopher's extensive high school coaching experience, Defendant Monaghan had no choice but to offer the head basketball coaching job to Christopher, instead of her friend, Defendant Maxey.

27.     Having brought her friend Defendant Maxey to Westbury High, however, Defendant Monaghan had to do something for Defendant Maxey. Defendant Monaghan, therefore, selected her friend, Defendant Maxey, to be the assistant basketball coach, serving under Plaintiff Christopher.  Prior to this appointment as assistant basketball coach at Westbury High, Defendant Maxey had no high school coaching experience.

28.     Although Christopher was warned "to watch his back around Defendants Monaghan and Maxey," Plaintiff Christopher had no idea that Defendants Monaghan and Maxey apparently already had a plan to make sure that Defendant Maxey ended the year as the Head Basketball Coach at Westbury High in place of Christopher.

29.     The new school year began at Westbury High. Christopher worked diligently to educate his students and revitalize a downhearted basketball program.

30.     To instill a sense of investment in the campus and promote a leadership mindset, Christopher requested that his basketball players clean up the entire Westbury High campus, including the scraping of gum off the desks in classrooms across the school.

31.     For himself, Christopher's goals were straightforward:

> *to have a winning basketball program, but to also promote entrepreneurship and academic excellence amongst a heavy African American program.*

32.     For each of his student-athletes, Christopher set the following goals:

> *to graduate;*
>
> *to get athletic scholarships; and*
>
> *to get college degrees in career fields that would allow each to earn enough to also be entrepreneurial;*
>
> *thereby, allowing each student to then return to the Houston area and contribute to their respective communities, helping other young people whenever possible.*

33.     Christopher also required that each of his student-athletes complete homework assignments (assigned by Christopher) before being able to practice. Such

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

assignments included researching higher degree options such as computer science, robotics, and cyber security. Cristopher wanted his student-athletes to look beyond the limited choices that (he believed) African American student-athletes were usually presented with.

34.     Christopher requested each student-athlete participate in an after school entrepreneur program held by a colleague at Westbury High.

35.     To bring the parents and community into the basketball program, Christopher invited the parents to volunteer for activities for the players and students across the Westbury High campus.

36.     Christopher pushed for a "boys to men" program where men from the community would come in and teach the young men how to tie a tie, change tires, check oil, and learn other day-to-day skills.

37.     Christopher brought in speakers, including an NBA player and a successful real estate investor, to speak with his student-athletes about using basketball as a tool, rather than as a savior.

38.     Everything changed for Christopher when basketball season began.

39.     Direct and intentional interference by Defendants Monaghan and Maxey started in full force during the second basketball game of the 2015-2016 season against Yates High School. While sitting in the stands, Defendant Monaghan started to directly interfere with Christopher's coaching of the game, using Defendant Maxey as a conduit.

With Defendant Maxey sitting on the bench near Christopher, Defendant Monaghan started texting Maxey to instruct Christopher to *"do this, do not do that—stop this, stop that."*

40.     Several games later during a tournament at Stafford High School, Defendants Monaghan and Maxey intensified matters against Christopher.

41.     A player's parent (hereafter, "Parent James") verbally and physical confronted Christopher and tried to *push-into* the team's huddle.   Deflected by Christopher, *Parent James then spoke privately to Defendant Monaghan*. Immediately afterwards, Parent James increased his abusive efforts towards Christopher and threatened:

> ***"…if Monaghan does not fire you (meaning Christopher), he (Parent James) would have something for him (meaning Christopher)."***

42.     Parent James's behavior worsened, resulting in Parent James's wife pushing Christopher's wife, while Christopher's wife was holding her and Christopher's infant son in her arms.

43.     Throughout the incident with Parent James, Defendant Maxey stayed hidden away.

44.     Although we do not know what Parent James and Defendant Monaghan discussed immediately before Parent James pushed Christopher's wife, we do know that

Defendant Monaghan called Christopher later that night and instructed Christopher not to coach the next day's basketball game. Instead, Defendant Monaghan would have Defendant Maxey step in as the game's Head Basketball Coach.

45. Two minutes into the next day's game, while Christopher was allowing Defendant Maxey to coach the game, Christopher was forced to get up and leave the gym, escorted out at the direction of Defendant Monaghan. Defendant Monaghan was not even at the game. For no apparent reason other than spite, Defendant Monaghan directed the removal of Christopher from the gym, in front of his student-athletes, their parents, and the entire community attending the game.

46. Immediately prior to that next day's game and just a few minutes before Christopher was escorted out of the gym, Defendant Maxey was seen on his cell phone. Were Defendants Maxey and Defendant Monaghan orchestrating Christopher's removal from the gym?

47. Christopher was allowed to return to his head coaching duties, but not before Defendants Monaghan and Maxey started spreading new, false and malicious allegations against Christopher. In retrospect, it seems clear that Defendant Monaghan had been hoping Christopher would resign.

48. With Christopher refusing to leave Westbury High, Defendant Monaghan then instituted her "Operation Push Out" targeted at Christopher's teaching.

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

49.     Notwithstanding a Fall semester with no negative teaching evaluations assessed against Christopher, Defendant Monaghan now had her henchmen after Christopher with endless teacher evaluations and surveillance.

50.     Without warning on January 22, 2016, Defendant Monaghan "temporarily" suspended Christopher from all coaching duties. A meeting between Christopher and Defendant Monaghan was set for January 26, 2016, with Defendant Monaghan stating that she wanted to discuss negative teaching evaluations now being directed at Christopher, apparently gathered during her Operation Push Out.

51.     The January 26, 2016 meeting between Christopher and Defendant Monaghan occurred as planned, but Christopher's teaching methods were all but a footnote on the agenda.  Instead, Defendant Monaghan unleashed a tirade centered on the events of the two referenced basketball games in November and December, topped off with unsubstantiated allegations stemming from a purported argument between Christopher and two of his players. Defendant Monaghan took all coaching duties away from Christopher, permanently. Unknown to Christopher at the time, the new, false allegations originated from Defendant Maxey.

52.     Christopher's coaching days at Westbury High were over. Defendant Maxey became the Head Basketball Coach, just as Defendant Monaghan had originally intended in August 2015.

53.     On February 4, 2016, Christopher learned that Defendants Monaghan and Maxey were not done with Christopher. Christopher received a call from a colleague at Westbury High, informing Christopher that:

> *"Monaghan's dogs were creating a paper trial of all of Christopher's texts and emails with his colleagues at Westbury High..."*

54.     Early on February 5, 2016, Christopher received an email from Defendant Monaghan, demanding that Christopher report to her office before Christopher's first class. The only purpose of such a meeting before class could be so that Defendant Monaghan could personally fire Christopher, expelling him forever from Westbury High.

55.     Having already endured enough at the hands of Defendants Monaghan and Maxey, Christopher did the only thing any self-respecting young man could. Christopher resigned from Westbury High. After coercing and extorting a resignation from Christopher, Defendant Monaghan accepted Christopher's resignation. Defendants Monaghan and Maxey had succeeded in constructively dismissing Christopher (hereafter, "Constructive Dismissal").

56.     On February 11, 2016, Christopher filed a grievance with Defendant Houston ISD, seeking redress for the actions of Defendant Monaghan ("Grievance").

57.     In retaliation for Christopher's filing of the Grievance, Defendants Monaghan and Maxey then dipped as low as educators could possibly go,  unleashing

false and highly defamatory accusations that Christopher was having an improper relationship with a student at Westbury High ("Fabrication"). **[The Fabrication was subsequently independently investigated by various agencies and found to be wholly groundless.]**

58.     Ignoring exculpatory written statements from the student and the mother of the student, Defendant Houston ISD took ownership of the Fabrication and the Constructive Dismissal of Christopher.

59.     On February 17, 2017, Defendant Houston ISD filed a written complaint against Christopher by reporting the Fabrication to the State Board for Educator Certification ("SBEC") operating within the Texas Education Agency ("TEA"). Defendant Houston ISD was, is essence, stating that Christopher's Teaching Certification should be REVOKED. Defendant Houston ISD even "back-dated" allegations of the Fabrication in an attempt to avoid the appearance of the obvious retaliation being directed at Christopher.

60.     On February 19, 2016, Defendant Houston ISD initiated  an additional attack against Christopher. Notwithstanding that Defendant Houston ISD had accepted Christopher's coerced and extorted resignation, Defendant Houston ISD asked TEA to lodge a sanction against Christopher's Teaching Certificate for "abandonment" of his teaching job at Westbury High.

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

61.     On March 2, 2016, Defendant Houston ISD, acting through its agent at Westbury High, denied Christopher's Grievance.

62.     As referenced, the Fabrication was subsequently investigated by the Houston Police Department and SBEC. Both agencies dropped the matter for lack of everything: truth, evidence, support.

63.     TEA also subsequently abandoned Defendant Houston ISD's effort to sanction Christopher's teaching certificate for "abandonment."

64.     Nonetheless, in today's world of heightened scrutiny related to student-teacher connections, the damage to Christopher had been done.

65.     For matters that were not moot or otherwise futile, Christopher attempted to get relief from Defendant Houston ISD. Yet Defendant Houston ISD was unwavering in its rejection of Christopher.

66.     Defendant Houston ISD purportedly did an investigation into the Fabrication but has refused to provide Christopher copies of any materials allegedly gathered.

67.      The harm to Christopher caused by the acts of the Defendants has been extreme: no job, no income, depression, and lost opportunities. Upon information and belief, Defendants continue to "black-ball" Christopher's employment opportunities.

68.     The Fabrication and the other acts of the Defendants haunt Christopher's psyche, his professional efforts, and his personal life, eliminating any reasonable opportunity for success or happiness.

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

69.   The Fabrication, Constructive Dismissal, and other actions of the Defendants were committed in contravention of, and without regard for, Christopher's equal protection, due process, freedom of expression, freedom of assembly, and fundamental fairness rights created by the Constitution of the State of Texas (collectively referred to as "Texas Constitutional Rights"). Christopher has been harmed by such acts.

70.   The Fabrication, Constructive Dismissal, and other actions of the Defendants were committed in contravention of, and without regard for, Christopher's rights set forth in the Texas Education Code and the regulations and jurisprudence stemming therefrom (collectively referred to as the "Texas Education Laws"). Christopher has been harmed by such acts.

71.   The Fabrication, Constructive Dismissal, and other actions of the Defendants were committed in contravention of, and without regard for, Christopher's rights set forth in the adopted policies and procedures governing Defendant Houston ISD (collectively referred to as the "District Policies and Procedures"). Christopher has been harmed by such acts.

72.   To redress such wrongs, Christopher was required to employ legal counsel.

73.   All conditions precedent to Plaintiff bringing these claims have been met.

### E.   PLAINTIFF'S CAUSES OF ACTION

74.   Plaintiff Christopher incorporates by reference the facts set forth in Article D: GENERAL BACKGROUND hereof.

14

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

## 1.  <u>TORTIOUS INTERFERENCE</u>

75.   The actions taken by Defendants Monaghan and Maxey:

(a)   were undertaken with actual knowledge that Christopher had a contractual relationship with Defendant Houston ISD, whereby Christopher was serving as teacher and coach within Houston ISD;

(b)   were intentionally and willfully undertaken to remove Christopher as a teacher and a coach at Westbury High, allowing the appointment of Defendant Maxey as the head basketball coach;

(c)   proximately caused Christopher to be injured by the wrongful Constructive Dismissal and Fabrication;

(d)   have resulted in extreme loss and damages to Christopher; and

(e)   were of such a nature that Defendants Monaghan and Maxey knew, or should have known, that Christopher's future employment ability would be impaired.

76.   As a result, Defendants Monaghan and Maxey have intentionally and tortiously interfered with Christopher's contractual  and employment relationships and are each liable to Christopher for all actual, consequential, and exemplary damages, for which Plaintiff Christopher now sues.

77.   Defendants Monaghan and Maxey are individually and personally liable and responsible for all such damages suffered by Christopher, because their intentional acts to harm Christopher are not actions permitted within the scope of such Defendants' employment duties.

## 2.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78.    The actions taken by Defendants Monaghan and Maxey:

(a)    were intentionally and willfully undertaken by Defendants Monaghan and Maxey;

(b)    were intentional and willful violations of the standards established by the Texas Constitutional Rights affording substantive and procedural protections to Christopher; and/or

(c)    were intentional and willful violations of the standards established the Texas State Education Laws affording substantive and procedural protections to Christopher; and/or

(d)    were intentional and willful violations of the standards established by the District Policies and Procedures affording substantive and procedural protections to Christopher;

(e)    constitute bullying as set forth Article E 3 hereafter;

(f)    were, if not intentional, certainly reckless with no regard for the outcome;

(g)    were extreme and outrageous in nature, particularly considering the context of the Fabrication;

(h)    have caused emotional distress upon Christopher; and

(i)    such emotional stress has been extreme.

79.    As a result, Defendants Monaghan and Maxey have intentionally inflicted emotional distress upon Plaintiff Christopher and are each liable to Christopher for all actual, consequential, and exemplary damages, for which Plaintiff Christopher now sues.

80.    Defendants Monaghan and Maxey are individually and personally liable and responsible for all such damages suffered by Christopher, because their intentional acts to

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

16

harm Christopher are not actions permitted within the scope of such Defendants' employment duties.

### 3.   **INTENTIONAL BULLYING**

81.    The actions taken by Defendants Monaghan and Maxey:

    (a)    were expressions by Defendants Monaghan and Maxey;

    (b)    which occurred on school property and during school events;

    (c)    have caused physical harm to Christopher, or, were sufficiently severe, persistent, and pervasive enough that such action created an intimidating, threatening, or abusive work environment for Christopher;

    (d)    exploited an imbalance of power between Defendant Monaghan and Christopher;

    (e)    have interfered with Christopher's employment;

    (f)    have proximately caused Christopher to be injured as a result of such bullying; and

    (g)    have resulted in extreme loss and damages to Christopher.

82.    As a result, Defendants Monaghan and Maxey have intentionally harmed Christopher and are each liable to Christopher for all actual, consequential, and exemplary damages, for which Plaintiff Christopher now sues.

83.    Defendants Monaghan and Maxey are individually and personally liable and responsible for all such damages suffered by Christopher, because their intentional acts to harm Christopher are not actions permitted within the scope of such Defendants' employment duties.

17

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

### 4.    **CONSTRUCTIVE DISMISSAL**

84.    The actions taken by Defendants Monaghan and Houston ISD:

(a)    were actions directed at Christopher;

(b)    were actions at, and related to, Christopher's place of employment;

(c)    created a hostile work environment for Christopher that became so abusive and intolerable that Christopher's tender of his resignation qualifies as a reasonable response;

(d)    proximately caused Christopher to be injured as a result; and

(e)    have resulted in extreme loss and damages to Christopher.

85.    As a result, Defendants Monaghan and Houston ISD have harmed Christopher and are each liable to Christopher for all actual, consequential, and exemplary damages, for which Plaintiff Christopher now sues.

86.    Defendants Monaghan and Houston ISD are liable and responsible for all such damages suffered by Christopher, because such Constructive Dismissal efforts are not actions permitted within the scope of Defendant Monaghan's employment duties, or, within the policies governing Defendant Houston ISD.

### 5.    **BREACH OF CONTRACT**

87.    The actions taken by Defendant Houston ISD as to Christopher were:

(a)    contrary to the employment agreement existing between Christopher and Defendant Houston ISD;

(b)    made notwithstanding Christopher's satisfaction of his employment duties;

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

(c)     made in retaliation for Christopher's filing of the Grievance;

(d)     proximately caused Christopher to be injured as a result; and

(e)     have resulted in extreme loss and damages to Christopher.

88.     As a result, Defendant Houston ISD harmed Christopher and is liable to Christopher for all actual, consequential, and exemplary damages, for which Plaintiff Christopher now sues.

## 6.     VIOLATIONS OF TEXAS CONSTITUTIONAL RIGHTS, TEXAS EDUCATION LAWS, AND DISTRICT POLICIES AND PROCEDURES

89.     The actions taken by Defendants:

(a)     were intentionally and willfully undertaken by Defendants;

(b)     were, if not intentional, certainly negligent or reckless with no regard for the outcome;

(c)     were extreme and outrageous in nature, particularly considering the context of the Fabrication;

(d)     violated the Texas Constitutional Rights affording substantive and procedural protections to Christopher; and/or

(e)     violated the Texas State Education Laws affording substantive and procedural protections to Christopher; and/or

(f)     violated the District Policies and Procedures affording substantive and procedural protections to Christopher;

(g)     have caused economic and personal harm and emotional distress upon Christopher; and

(h)     such harm to Christopher has been extreme.

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

90.     As a result, Defendants harmed Christopher and are liable to Christopher for all actual, consequential, and exemplary damages, for which Plaintiff Christopher now sues.

91.     Defendants are liable and responsible for all such damages suffered by Christopher, because such intentional violations of rights and procedures are not actions permitted within the scope of Defendants Monaghan or Maxey's employment duties, or, within the policies governing Defendant Houston ISD.

### 7.     CONSPIRACY

92.     The actions taken by Defendants:

(a)     were the actions of two or more persons;

(b)     were undertaken with the goal of harming Christopher;

(c)     represent a common "meeting of the minds" that such Defendants would proceed with causing harm to Christopher;

(d)     were unlawful and overt acts intended to harm Christopher;

(e)     proximately caused Christopher to be injured; and

(f)     have resulted in extreme loss and damages to Christopher.

93.     As a result, Defendants have conspired to harm Christopher and are each liable to Christopher for all actual and consequential damages, for which Plaintiff Christopher now sues.

94.     Defendants are each liable and responsible for all such damages suffered by Christopher, because actions of conspiracy are not actions permitted within the scope of Defendants Monaghan and Maxey's employment duties, or, within the policies governing Defendant Houston ISD.

## 8.   EXEMPLARY DAMAGES

95.     The actions taken by Defendants were intentional and maliciously executed against Christopher.  As such, said Defendants are liable for exemplary damages allowed by Texas jurisprudence and the Texas Civil Practice and Remedies Code, for which Christopher now sues in the amount of $ 4,000,000.00.

## 9.   DECLARATORY RELIEF

96.     As a result of existing uncertainty and insecurity with respect to what actions of the Defendants are protected by qualified immunities, if any, Plaintiff Christopher seeks a declaratory ruling as to:

> **Which actions of the Defendants were intentionally committed and, therefore, do not fall within any qualified immunity?**

## 10.   PRE and POST JUDGMENT INTEREST

97.     Plaintiff Christopher also requests pre and post judgment interest as may be allowed by Texas law.

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

## 11.  ATTORNEYS' FEES

98.    Plaintiff Christopher should be awarded his reasonable and necessary attorneys' fees incurred in relation to the foregoing request for declaratory relief, as such ruling is allowed by Chapter 37 of the Texas Civil Practice & Remedies Code.

### F.    REQUEST FOR JURY

99.    Christopher hereby exercises his right to demand that a jury be empaneled, and, that the foregoing causes of actions and requests for relief be presented to such jury for resolution.

### G.    REQUESTS FOR DISCLOSURE

100.    Plaintiff Christopher hereby requests that Defendants Monaghan, Maxey, and Houston ISD each provide the applicable answers to the Request for Disclosure provided by the Texas Rules of Civil Procedure.

### H.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff CHRISTOPHER LOREN SMITH prays that citation be issued; that Defendants be cited to appear, and that upon final trial hereof, that judgment be entered in favor of Plaintiff for the actual, consequential, and exemplary damages set forth herein including pre and post judgment interest; that the foregoing declaratory request be made; that Plaintiff Christopher be reimbursed his reasonable and necessary attorneys' fees required to bring this matter; that all costs of Court be taxed against Defendants; and that Plaintiff Christopher have such

22

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26

further and other relief, general and special, both at law or in equity, to which he may

show himself to be justly entitled.

Respectfully submitted,

Law Offices of Donald G. Henslee

By: _____

Terry P Gorman, Esq.  (lead)
State Bar No. 08218200
Chigozie F. Odediran, Esq.
State Bar No. 24098196
Donald G. Henslee, Esq.
State Bar No.  09488500
901 Mopac Expressway South, Suite 300
Austin, Texas 78746
Telephone: (972) 235-4700 (tpg Direct)
Telecopier: (512) 597-1455
tgorman@school-law.co
**COUNSEL FOR**
**PLAINTIFF CHRISTOPHER LOREN SMITH**

**PLAINTIFF'S ORIGINAL PETITION**
ldgh 2017.09.26