UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LOREN SMITH, | § | |
| | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-2938 |
| | § | |
| HOUSTON INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
|     *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Houston Independent School District's (HISD) motion to dismiss. Dkt. 6. Plaintiff Christopher Loren Smith has not responded. Having considered the motion, complaint, and applicable law, the court is of the opinion that HISD's motion to dismiss should be GRANTED with respect to both claims and that Smith's case should be DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

This is an employment discrimination case. Christopher Loren Smith began working as a teacher and head basketball coach at Westbury High School ("Westbury") in the fall of 2015.[1] Dkt. 1-6 ¶¶ 15–17. At the same time, Susan Monaghan became the principal at Westbury. *Id.* ¶ 22. Monaghan planned to make Robert Maxey the head basketball coach, replacing Smith. *Id.* ¶ 26. Monaghan, Maxey, and others conspired to interfere with his coaching, instigate conflict, remove

---

[1]Because this is a 12(b)(6) motion to dismiss, the court accepts the factual allegations in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

him from the gym, spread false accusations about him, and ultimately remove him from his role as head coach. *Id.* ¶¶ 37–49. Subsequently, Monaghan installed Maxey as head coach. *Id.* ¶ 50.

Despite being removed from his role as head coach, Smith continued teaching at Westbury. *Id.* ¶¶ 50–51. Monaghan targeted Smith's teaching position in what Smith refers to as her "Operation Push Out." *Id.* ¶ 46. This operation included endless teacher evaluations, surveillance, and "creating a paper trail of all of [Smith]'s texts and emails" with colleagues. *Id.* ¶¶ 47, 51. As a result of this "hostile work environment" and "retaliation," Smith resigned in early February 2016. *Id.* ¶ 53.

Shortly thereafter, Smith filed a grievance with HISD.[2] *Id.* ¶ 54. Monaghan and Maxey retaliated by "unleashing false and highly defamatory accusations" that Smith was having an "improper relationship" with a student.[3] *Id.* ¶ 55. These accusations prompted HISD to file a written complaint with the State Board for Educator Certification ("SBEC") despite being presented with exculpatory information. *Id.* ¶¶ 56–57. After Smith's resignation, HISD attempted to have him sanctioned by the Texas Education Agency ("TEA") for abandoning his teaching position.[4] *Id.* ¶ 58.

Smith initiated this lawsuit in state court against HISD, Monaghan, and Maxey. Dkt. 1-1. Smith's original petition asserted seven state causes of action. *Id.* HISD moved to dismiss all but two of the claims. Dkt. 1-4. In response, Smith nonsuited Monaghan and Maxey (Dkt. 1-5) and filed an amended complaint (Dkt. 1-6). In the amended complaint, Smith replaced all of his state

---

[2]The grievance was ultimately denied. Dkt. 1-6 ¶ 59.

[3]The accusations were "independently investigated" by the Houston Police Department and the State Board for Educator Certification and found to be "wholly groundless." Dkt. 1-6 ¶¶ 55, 60. Smith also claims HISD completed its own investigation, but failed to provide him with copies of related documents. *Id.* ¶ 64.

[4]The TEA did not complete this process. Dkt. 1-6 ¶ 61.

law claims with Title VII and Section 1983 claims. Dkt. 1-6. HISD removed the action to this court. Dkt. 1. HISD now moves to dismiss both claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that: (1) the Title VII claim is barred because Smith failed to exhaust his administrative remedies; and (2) the Section 1983 claim is insufficient because Smith failed to allege that "any unconstitutional actions taken against him occurred" as a result of "HISD policy or firmly entrenched custom." Dkt. 6.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

## III. ANALYSIS

### A. Title VII

"Title VII requires employees to exhaust their administrative remedies before seeking judicial

3

relief." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). In order to meet this exhaustion requirement, a plaintiff must timely file an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). The charge must be filed within a maximum of 300 days of an "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1) (requiring filing within 180 days unless plaintiff first files with certain state or local agencies, in which case the deadline is 300 days).

HISD contends that Smith's Title VII claim must be dismissed as a matter of law because Smith fails to allege that he properly exhausted his administrative remedies.[5] Dkt. 6 at 6. Smith filed a grievance with HISD on February 11, 2016. Dkt. 1-6 ¶ 54. Smith declares that "further pursuit of such administrative remedies would have been futile and moot." *Id.* ¶ 65. However, Smith never claims to have filed an employment discrimination charge with the EEOC and none is appended to his complaint. In fact, in his first-amended petition, Smith does not mention the EEOC at all. Thus, Smith failed to show that he exhausted his administrative remedies. HISD's motion to dismiss Smith's Title VII claim is GRANTED.

**B. Section 1983**

For the purposes of Section 1983, a school district is a municipality. *See, e.g.*, *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398 (5th Cir. 2015). However, "a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory." *Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 377 (5th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018 (1978)). A claim of municipal liability under 42 U.S.C. § 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving

---

[5] Smith had an opportunity to respond to HISD's motion to dismiss by offering proof of a timely filed EEOC charge, but he did not.

4

force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

Whether an official has policymaking authority is a question of state law. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). "Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees." *Id.* A policymaker may adopt a policy through written policy statements, ordinances, or regulations, or by acquiescing to a wide-spread practice. *Yara v. Perryton Indep. Sch. Dist.*, 560 F. App'x 356, 359 (5th Cir. 2014) (citing *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009)). "If actions of [district] employees are to be used to prove a custom for which the [district] is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [district] employees." *G.M. v. Shelton*, 595 F. App'x 262, 265 (5th Cir. 2014) (citing *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Id.* (citing *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

Smith alleges that the actions taken against him violated his constitutional rights, but fails to connect these violations to HISD policies or customs. Smith emphasizes that "*all such actions were committed by employees acting within their respective scope of work for Defendant Houston ISD.*" Dkt. 1-6 ¶ 73 (emphasis in original). The court presumes this is a reference to *respondeat superior*. *See, e.g.*, 33 Tex. Jur. Employer and Employee § 300 ("[U]nder the doctrine of *respondeat superior*, an employer is vicariously liable for the tortious acts of its employees only when they act within their **scope of employment**." (emphasis added)). However, a municipal authority cannot be

5

held liable on a *respondeat superior* theory. *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor.").

Alternatively, while not naming the Board of Trustees directly, Smith does plead allegations that could plausibly be attributed to the Board. For instance, Smith alleges HISD ignored exculpatory statements regarding accusations of an improper relationship with a student (Dkt. 1-6 ¶ 56), filed a complaint against Smith with the SBEC (*Id.* ¶ 57), requested that the TEA sanction Smith (*Id.* ¶ 58), denied Smith's grievance (*Id.* ¶ 59), and refused to provide Smith with information about the investigation HISD conducted (*Id.* ¶ 64).

However, Smith "alleges no **facts** that would show that any the [sic] 'Constitutional Rights' violations occurred in accordance with official HISD policy or firmly entrenched custom." Dkt. 6 at 11 (emphasis in original). Smith contends that "unnamed Houston ISD administrators and trustees . . . approved or allowed [the] Deprivation." Dkt. 1-6 ¶ 72. However, instead of alleging facts that support his claim, Smith merely infers that the only explanation for what happened to him is that it was "the result of . . . official 'customs' and/or 'policies,' done with the approval of policymakers, and with "deliberate indifference towards the harm that would be inflicted." *Id.* ¶ 74. The court cannot draw that same inference. Smith must allege some facts showing that an official policy or custom exists and draw a causal connection between that policy or custom and the constitutional harm alleged. Because Smith fails to do so, HISD's motion to dismiss Smith's Section 1983 claim is GRANTED.

## IV. Conclusion

HISD's motion to dismiss is GRANTED. Dkt. 6. Smith's claims are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on November 2, 2018.

_____
Gray H. Miller
United States District Judge